THE METROPOLIS THEATER COMPANY *et al.* Appellees, *vs.*
THE CITY OF CHICAGO, Appellant.

*Opinion filed June 29, 1910—Rehearing denied October 12, 1910.*

1. TAXES—*legislature has plenary power over subject of taxation.* The power of taxation is a necessary incident of sovereignty and is possessed by the State without being expressly conferred by the people, and in Illinois this power is vested in the legislature, which possesses plenary power over the subject, except so far as it is restricted by the Illinois constitution.

2. SAME—*legislature may delegate power to tax or license to municipal corporations.* Municipal corporations have no inherent powers independently of any grant, but the legislature may delegate the power to tax for local purposes or to license and regulate, and hence the validity of a municipal tax depends upon whether the power to levy it has been expressly granted.

3. MUNICIPAL CORPORATIONS—*cities have full power to license and regulate theaters.* Under clause 41 of section 1 of article 5 of the Cities and Villages act, municipal corporations have full power to "license, tax, regulate, suppress or prohibit" the various occupations enumerated therein, including theatrical and other exhibitions; and this power includes the power to classify the various amusements and fix a different license fee for each class.

4. SAME—*rule as to reasonableness of a license fee.* Where a license is levied solely as a regulatory measure the amounts should bear some reasonable relation to the additional burdens imposed by the business or occupation licensed, but where it is imposed for the purpose of revenue, or for revenue and regulation, the relation between the license and the public burdens is not involved.

5. SAME—*a license for revenue need not be in proportion to value of property.* Section 1 of article 9 of the constitution, which requires taxes to be levied in proportion to the value of the property taxed, has no application to licenses for purpose of revenue.

6. SAME—*Chicago ordinance fixing theater license on basis of highest price for seats is valid.* The Chicago ordinance classifying entertainments for gain and fixing a graded license fee for the first class, based upon the highest charge to be made for seats, exclusive of box seats, is valid as to such graded license fee.

CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, CHARLES M. HAFT, and JAMES F. BURNS, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, and HERMAN FRANK, for appellees.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

The Metropolis Theater Company and numerous other theatrical companies and individuals, as owners and operators of various theaters in the city of Chicago, filed their bill in the circuit court praying for an injunction against the enforcement of a city ordinance which classified theaters into five classes and fixed an annual license fee for each, based on the price of admission, exclusive of that charged for box seats, on the ground that said ordinance is unreasonable and void. A demurrer was interposed to the bill by the city, which was overruled. The defendants declining to answer further, a decree was entered perpetually enjoining the enforcement of section 104 of the ordinance in question. The city has appealed to this court.

The only question presented is the validity of section 104 of the ordinance. Section 99 of the ordinance in question classifies all entertainments given for gain, and puts theatrical, operatic, dramatic, vaudeville, variety and spectacular entertainments in the first class. Section 104 fixes a license fee for the entertainments in the first class, as follows:

*"First class*—If it be intended to produce, offer or present entertainments of the first class, and the highest price of admission charged thereto, exclusive of that charged for box seats, is one dollar ($1) or more, the annual license fee shall be one thousand dollars ($1000); if the highest price of admission, exclusive of that charged for box seats, exceeds fifty cents (50c) but is less than one

dollar ($1) the annual license fee shall be four hundred dollars ($400); if the highest price of admission, exclusive of that charged for box seats, exceeds thirty cents (30c) but does not exceed fifty cents (50c) the annual license fee shall be three hundred dollars ($300); if the highest price of admission, exclusive of that charged for box seats, exceeds twenty cents (20c) but does not exceed thirty cents (30c) the annual license fee shall be two hundred and fifty dollars ($250); if the highest price of admission, exclusive of that charged for box seats, does not exceed twenty cents (20c) the annual fee shall be two hundred dollars ($200)."

Section 110 of the ordinance provides that the license issued shall state the highest price of admission that shall be charged for the entertainment to be given, also the seating capacity of the place, and that no more than the highest price shall be charged for admission to such entertainment, and that no more than the number of persons for which such place has seating capacity shall be allowed to enter or occupy such place at any one time. It provides that any person, firm or corporation having a license limiting the maximum price which may be charged for admission to entertainments, may at any time apply for a license authorizing such person to charge a higher maximum price for admission to entertainments upon paying the difference between the license fee already paid and that to be charged by the terms of the ordinance for the license for which such application is made.

The bill sets out in detail the situation of the several theaters, with the seating capacity of each, and alleges that many of the theaters which charge lower rates for admission, owing to their greater seating capacity and more frequent entertainments, have a much larger income than other theaters with less seating capacity which charge the lower prices for admission, and upon this allegation appel-

lees base their principal argument against the validity of the ordinance.

The power of taxation is a necessary incident of sovereignty and is possessed by the State without being expressly conferred by the people. This inherent power with us is vested in the legislature, which possesses plenary power over the subject except so far as it is restricted by our constitution or that of the United States. (1 Cooley on Taxation, 7; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561.) The power to tax for local purposes, as well as the power to license and regulate, may be delegated by the legislature to local municipalities. (*City of East St. Louis* v. *Wehrung*, 46 Ill. 392.) Local municipalities have none of the elements of sovereignty in them. They do not possess, independently of grant, any inherent power. The statute under which they act is a grant of power and not a limitation, as is the constitution of the State. In the case of a municipal tax, its validity depends upon whether the power to levy it has been expressly granted, while in respect to a tax levied by the State the only question is, does the constitution prohibit it? A license is a privilege granted by the State directly or indirectly through the medium of a municipality, usually upon the payment of a valuable consideration, called a license fee. The license must confer authority to do something which would be illegal if done without such license. (Cooley on Taxation, 1137.) License fees may be imposed for regulation, revenue or prohibition. (*Bessette* v. *People,* 193 Ill. 334.) The license fee may be both for regulation and revenue.

Section 1 of article 5, chapter 24, Hurd's Statutes of 1909, provides as follows: "The city council in cities, and president and the board of trustees in villages, shall have the following powers: * * * *Forty-first*—To license, tax, regulate, suppress and prohibit hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals and other

exhibitions, shows and amusements, and to revoke such license at pleasure."

It is apparent from the language above quoted that the legislature intended to confer full power on cities and villages to "license, tax, regulate, suppress and prohibit" the several enumerated occupations, subject to no other limitations than are imposed by the constitution upon the legislature itself. The only limitation found in our constitution upon the power of the legislature to tax occupations is, that the tax shall be "uniform as to the class upon which it operates." (Const. 1870, art. 9, sec. 1.) The power given to cities and villages to tax and regulate theatrical and other exhibitions, shows and amusements, carries with it the power to classify the subjects and to fix a different license fee for each class. The power to classify must be exercised in a reasonable manner, but a very wide range of discretion is allowed legislative bodies in the exercise of this power. Where a license is levied solely as a regulatory measure the amounts should bear some reasonable relation to the additional burdens imposed by the business or occupation licensed, but where it is imposed for revenue or for revenue and regulation, the relation between the license and the public burden imposed is not involved.

The bill in this case alleges that the additional expense to the city for inspection, police supervision, etc., does not exceed $50 for each theater per annum, and it is strenuously argued that the ordinance is unreasonable because the license fees are arbitrary and excessive. If the ordinance had been passed under the power merely to regulate theaters this argument would be entitled to serious consideration. But such is not the case here. The ordinance may be sustainable under the taxing power alone, without reference to its reasonableness as a regulatory measure.

Classification of subjects for taxation may not be made arbitrarily, but necessarily there must be great freedom of discretion, even though it result in ill-advised, unequal and

oppressive legislation. (*Heath* v. *Worst,* 207 U. S. 338.) A classification will be sustained where it is based upon a reasonable difference of situations or conditions. (*Bessette* v. *People, supra; Douglas* v. *People,* 225 Ill. 536.) The classification of theaters made by the ordinance in question is based upon a difference in the charge of admission. Under this ordinance every person desiring to give an entertainment is left free to fix the charge of admission as he sees fit. He may thus elect into which class he desires to be placed. Presumably each person will select the class which will best promote his interests. It may be possible that this basis of classification is not the most equitable that could be devised, but, as was said by the United States Supreme Court in *State Railroad Tax case,* 92 U. S. 575: "Perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized."

It has often been held by this court that section 1 of article 9 of the constitution, which requires taxes to be levied in proportion to the value of the property taxed, has no application to licenses when granted for the purpose of revenue. *Wiggins Ferry Co.* v. *City of East St. Louis,* 102 Ill. 560; *Howland* v. *City of Chicago,* 108 id. 496; *People* v. *Steele,* 231 id. 340.

We do not deem it necessary to review the numerous cases illustrating the discretion that may be exercised by legislative bodies in the classification of the subject of taxation. This entire subject has recently been reviewed by this court in *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58, in which what is known as the Wheel Tax ordinance was involved. Under the principle announced in that case and the authorities therein reviewed we have no doubt of the validity of section 104 of the ordinance involved in this case.

The judgment of the circuit court of Cook county is reversed and the case remanded, with directions to that court to sustain the demurrer and dismiss the bill.

*Reversed and remanded, with directions.*

CARTER and DUNN, JJ., dissenting.