**Fox Film Corporation, Appellee, v. Morgan A. Collins, Superintendent of Police et al., Appellants.**

### Gen. No. 29,983.

1. EXHIBITIONS AND SHOWS—*proper remedy to restrain city official from preventing exhibition.* If an officer in refusing a permit is acting under an invalid ordinance equity has jurisdiction to restrain him but if the ordinance is valid complainant is left to his remedy by mandamus.

2. MUNICIPAL CORPORATIONS—*validity of ordinance for licensing of moving pictures.* An ordinance which empowers certain public officers to refuse permit to exhibit pictures which portray depravity, criminality or lack of virtue of a class of citizens of any race, color, creed or religion and expose them to contempt, derision or obloquy and those which tend to produce a breach of the peace or riots or purport to represent a hanging, lynching or burning of a human being, is valid.

3. MUNICIPAL CORPORATIONS—*validity of ordinance empowering police officers to prohibit moving picture exhibition.* An ordinance which authorizes police officers to prohibit the exhibition of pictures depicting certain enumerated qualities does not involve an arbitrary discretion nor a legislative or judicial act.

4. MUNICIPAL CORPORATIONS—*validity of ordinance regulating moving picture exhibition.* Section 2788 of the ordinances of Chicago designed to permit the exhibitions of a certain class of pictures to persons over 21 years of age in no way affects the validity of section 2787, prohibiting the exhibition of pictures which are immoral or obscene or tend to a breach of the peace.

5. EXHIBITIONS AND SHOWS—*immorality of moving picture portraying crime.* A motion picture film which has as its principal interest the repeated shooting at or of one man by another, such shooting not pertaining to the necessities of war nor the preservation of law and order but being of such nature as would result in murder, may be said to be immoral within the meaning of a statute or ordinance authorizing officers to prohibit the exhibition of immoral pictures.

6. INJUNCTIONS—*immateriality of averments in bill.* In a suit to enjoin police officers from preventing the exhibition of a certain motion picture film the averments contained in the sworn bill as to the reasons given by the board of censors for refusing a permit are not controlling where the temporary injunction was granted after notice and due consideration of the affidavits submitted by each side.

7. INJUNCTIONS—*when affidavits of individuals may be considered.* In a suit to enjoin the chief of police and board of censors from prohibiting the exhibition of a certain motion picture film, though the board of censors acted as a body, affidavits of individual members setting forth their opinions as to the detrimental and dangerous nature of the film may properly be considered to show that in acting as it did the board was proceeding under the prohibition of the ordinance against immoral pictures.

8. INJUNCTIONS—*when temporary injunction should not be allowed to stand pending hearing for permanent writ.* In a suit to enjoin interference with the exhibition of a motion picture film the temporary injunction should not be allowed to stand until there is a final hearing where by so doing complainant, though ultimately defeated, might meanwhile obtain all the relief really desired.

9. INJUNCTIONS—*as remedy to prevent enforcement of valid ordinance.* Where the chief of police and board of censors were acting under a valid ordinance in refusing a permit to exhibit a certain motion picture film a court of chancery had no jurisdiction to enjoin their action, the remedy, if any, being by mandamus.

Interlocutory appeal by defendants from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the third division of this court for the first district. Reversed and remanded with directions. Opinion filed March 3, 1925. Rehearing denied April 2, 1925.

FRANCIS X. BUSCH, Corporation Counsel, for appellants; ALBERT H. VEEDER, Asst. Corporation Counsel, of counsel.

LEESMAN & ROEMER, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On December 15, 1924, the plaintiff, Fox Film Corporation, the owner of a moving picture entitled, "The Deadwood Coach," filed a bill of complaint in the circuit court.  It alleged that on December 8, 1924, it made an application as provided in a certain ordinance of the City of Chicago of November 22, 1922, to the superintendent of police, through the Censor Board, for a permit so that the picture might be produced and exhibited, but that, on the ground that the picture was obnoxious, as representing too much shooting, it was refused.  It prayed that a certain ordinance be decreed to be invalid and that the City of Chicago and the superintendent of police and his deputies be enjoined from enforcing the ordinance and prohibiting the complainant in the production, exhibition or promulgation of the picture.

Eight affidavits in support of the allegations of the bill of complaint were filed with it.  The day following the filing of the bill of complaint, the defendants filed an unsworn answer.  On the next day, December 17, 1924, pursuant to a motion by counsel for the complainant, the chancellor entered an order enjoining the defendants, as prayed, until the further order of the court.  An appeal therefrom was prayed and allowed.  On December 20, 1924, on motion of counsel for the defendants, that part of the order of December 17, 1924, allowing an appeal was vacated and set aside.  On December 22, 1924, an amended answer was filed by the defendants, and on the same day, upon motion to dissolve the temporary injunction, both parties being represented in court and the court having considered said motion together with

the bill of complaint and affidavits filed by both complainant and defendants, and being fully advised in the premises, it was ordered that the motion to dissolve the temporary injunction be denied. This appeal is therefrom.

The material facts alleged in the bill are substantially as follows: The complainant is a corporation and owns and controls certain pictures which are commonly exhibited to the public by means of moving picture devices in theatres and places of amusement in the City of Chicago. One picture which it owns is entitled, "The Deadwood Coach." It is based on a novel entitled, "The Orphan." The picture portrays, first, a killing, then a fight with the Indians and a stagecoach holdup, and an attempt to kill, then the shooting up of some kind of eating house, and a diving from a window, then a holdup of the Deadwood coach and its destruction, then a killing of the guard, the driver being beaten and tied to a tree, then an arrest, then a breaking of the jail by the rougher element of the town, then a release of a prisoner, and, finally, a so-called desperate fight to hold up the stage, then an attempt to escape and, finally, a man plunges 1,000 feet to his death on the rocks. The complainant, on December 8, 1924, made an application in writing for a permit, as provided for by the ordinance of the City of Chicago, concerning moving pictures, and exhibited to the superintendent of police and his deputies, known as the Censor Board, the picture in question, but it was refused, and the reason given by the Censor Board was that the picture was obnoxious as representing the shooting of human beings, although (it is alleged) it was admitted by the Censor Board that the picture was not immoral or obscene. The complainant has spent a large amount of money manufacturing moving pictures. Its business is furnishing moving pictures to the various exhibitors in the City of Chicago, but it does not itself exhibit said

pictures to the public. The refusal of the City to permit the picture in question to be exhibited will result in the destruction of the good will, patronage and business of the complainant, as its patrons will refuse to accept the picture in question. Many persons are in the same business and in the same situation as complainant, and the enforcement of the penalties of the moving picture ordinance will affect a great many such persons, and the prosecution of them for an alleged violation of the ordinance will result in a multiplicity of suits, as the superintendent of police has threatened to enforce the penalties of the ordinance and to arrest employees of the complainant and its patrons when found violating the alleged provisions of the ordinance, and, as a result, the complainant will suffer irreparable loss and injury. The picture, ''The Deadwood Coach,'' has a unique value, and its confiscation would result in depriving the complainant of property not to be measured in damages. The complainant has spent hundreds of thousands of dollars in the production, advertising and distribution of the picture, all of which will be lost unless it can be exhibited. It is further alleged that the picture is not in any respect immoral or obscene, nor does it have a tendency to disturb the public peace, nor is it indecent or lewd.

It is further alleged in the bill that the ordinance in question is unreasonable, invalid and void; that it is indefinite and uncertain; that it operates unfairly and unjustly in that exhibitions other than those by moving pictures are not attempted to be controlled or regulated by it. The bill prays that article III, ch. 52 of the Chicago Municipal Code entitled, ''Moving Pictures,'' and particularly section 2787 thereof, be decreed to be unreasonable and invalid, and that the defendants be enjoined from enforcing the provisions of the ordinance, or otherwise interfering with it in the production, exhibition or promulgation among its patrons of the picture in question.

The chief question precipitated by this appeal is whether the ordinance, or parts of it, pursuant to which the permit was refused, are invalid. It is the law, generally, that when an officer acts under an ordinance which is invalid, equity has jurisdiction to restrain him. *Cicero Lumber Co. v. Town of Cicero,* 176 Ill. 9; *Film Classics of Illinois v. Dever,* 234 Ill. App. 614. If the ordinance is valid, equity has no jurisdiction, and the complainant is left to pursue its remedy by mandamus. *Film Classics of Illinois v. Dever, supra.*

The particular sections of the ordinance, the validity of which is challenged, are sections 2785 and 2794, of the Chicago Municipal Code of 1922. By an ordinance of 1909 and by the Municipal Code of 1911, the prohibition of pictures extended, in terms, only to those that were immoral and obscene. In 1917, the Criminal Code of the State was amended (sections 224a and 224b, ¶¶ 457, 458, of chapter 38, Cahill's St. 1923), and made it unlawful for any one to make, publish or exhibit in any public place any moving picture which "portrays depravity, criminality * * * of any race, color, creed or religion which said publication or exhibition exposes the citizens of any race, color, creed or religion to contempt, derision, or obloquy, or which is productive of breach of the peace or riots," and made it unlawful for any one to make, "present or exhibit in any public place * * * any publication or representation by moving picture * * * representing or purporting to represent any hanging, lynching or burning of any human being."

In 1922, the City of Chicago, following quite closely the text of the amended statute, passed an ordinance (section 2787, Chicago Municipal Code 1922) which provided that if a picture for the showing or exhibition of which an application for a permit is made "is immoral or obscene, or portrays depravity, criminality or lack of virtue, of a class of citizens of any race,

color, creed or religion and exposes them to contempt, derision or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching or burning of a human being, it shall be the duty of the superintendent of police to refuse such permit, otherwise it shall be his duty to grant such permit.'' The words ''immoral or obscene'' are not in the statute.

Counsel for the complainant argue (1) that the ordinance is invalid; (2) that that portion of the ordinance by which the superintendent of police is required to refuse a permit for a picture ''that portrays depravity, criminality or lack of virtue, of a class of citizens of any race, color, creed or religion and exposes them to contempt, derision or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching or burning of a human being,'' is invalid; that it constitutes a delegation of legislative and judicial powers to the police and the members of the department, and that the city is given no specific power to prohibit moving pictures, except on the ground that they are immoral or obscene; and (3) that whether the whole section is void or not, action of the Censor Board was taken under that part of the section that is invalid.

On the other hand, it is the theory of counsel for the city that not only is the whole ordinance reasonable and valid, but that even if those portions of the ordinance pertaining to race animosity, or a breach of the peace, or the representations of the destruction of a human being, be held invalid, that the invalidity of a portion of the ordinance should not affect the validity of the remainder; and that, therefore, the complainant should be relegated to his remedy by mandamus under the valid portion of the ordinance.

By the Cities and Villages Act, art. V [Cahill's St. ch. 24, ¶ 65], the city council is given the following powers: (clause 41), ''to license, tax, regulate, sup-

press and prohibit * * * theatrical and other exhibitions, shows and amusements''; (clause 45), ''to prohibit the sale or exhibition of obscene or immoral publications, prints, pictures or illustrations''; (clause 58), ''to regulate places of amusement,'' and (clause 100), ''to pass all ordinances * * * and make all regulations, proper or necessary, to carry into effect the powers granted.'' From that it follows that the legislature has given to the City of Chicago power to use every reasonable and legitimate method and means to prohibit and prevent the publication and exhibition of obscene or immoral pictures. *Block v. City of Chicago,* 239 Ill. 251. In *Nahser . v. City of Chicago,* 271 Ill. 288, the court said: ''Clause 41 gave cities all the power the State had to do the things purported to be authorized by said clause, subject to no limitations except those imposed by the constitution upon the legislature.'' Citing, *Metropolis Theater Co. v. City of Chicago,* 246 Ill. 20. Having been given full power to prohibit the exhibition of obscene or immoral pictures and to regulate places of amusement, and to pass ordinances and make regulations necessary to the exercise of that power, does the ordinance here in question delegate legislative and judicial powers to the superintendent of police and the members of that department? The ordinance does delegate power, but not to make laws. There is a distinction between, on the one hand, the enactment of a law by the legislature or of an ordinance by a municipality, and, on the other, the exercise of judgment and discretion by an administrative officer, who undertakes to do all the reasonable things necessary to enforce the law. The cleavage is oftentimes difficult to discover, but it exists. *People v. Reynolds,* 5 Gilm. (10 Ill.) 1. In the *Block* case, *supra,* the late, distinguished Mr. Justice Cartwright said: ''It is also argued that the ordinance is void because it delegates legislative and judicial powers to the chief of police

by giving him the power to determine whether a picture or series of pictures is immoral or obscene, and not giving to the applicant for a permit a day in court for the determination of the question whether the picture or series of pictures is immoral or obscene. It is true that a legislative body cannot divest itself of its proper function to determine what the law shall be, but it may authorize others to do those things which it might properly but cannot understandingly or advantageously do." *Arms v. Ayer,* 192 Ill. 601; *Mutual Film Corporation v. Ohio Industrial Commission,* 236 U. S. 230.

If, as was true at the time of the *Block* case, the ordinance now comprehended only pictures that were immoral or obscene, it would be a reasonable exercise of the power of the city, and valid; also, the means provided for its enforcement through the superintendent and his deputies, whether policemen or a board of censors, would be unobjectionable.

The question then arises, do the new matters contained in section 2787 render the ordinance invalid. They were put in, apparently, to have the ordinance comply in substance with the Criminal Code. In addition to the words "immoral or obscene" they are as follows: (1) Pictures which portray depravity, criminality or lack of virtue of a class of citizens of any race, color, creed or religion and expose them to contempt, derision, or obloquy; (2) those which tend to produce a breach of the peace or riots; and (3) those purporting to represent any hanging, lynching or burning of a human being. Of course it may be a question whether or not the word "immoral," as used in the earlier and in the present ordinance and sanctioned by the *Block* case, is not in and of itself of sufficient connotation to include all the other matters now recited in section 2787, but, however that may be, we are of the opinion that the added matters do not make the section invalid. In deter-

mining whether a picture portrays depravity of a class and exposes them to obloquy, or portrays matters tending to produce a breach of the peace or riots, or purports to represent any hanging, lynching or burning of a human being, it does not require any more knowledge or the exercise of any more difficult judgment than in determining whether a picture is immoral or obscene; yet the determination of the latter, pursuant to an ordinance, has already been approved, as we have stated above, in the *Block* case. In our judgment, none of the added matters makes the section invalid.

For the complainant, emphasis is put upon the case of *People v. Sholem*, 294 Ill. 204. In our judgment, however, that is quite distinguishable from a moving picture case. In that case a statute, which authorized a fire marshal to recover penalties for failure to obey his orders in regard to the maintenance of buildings, was held unconstitutional, because it laid down no rule whereby he was to determine when or for what reason a building was particularly liable to fire, and, so left it to his discretion to determine when a building was so liable "for any cause." The court there said it was "the delegation of arbitrary discretion." The ordinance in the instant case, section 2787, does not involve an arbitrary discretion. The standard or rule is fixed. The picture must not come within one of the four inhibitions; and in determining that, the average man is presumed to know when a picture is immoral or obscene (*Block* case), or in the same way when it depicts any of the other enumerated qualities, and to exercise the judgment arising from that knowledge. The law specifically and expressly describes the quality; the administrator merely determines whether the picture possesses it or not. That is not making a law, but applying it. It involves neither a judicial nor a legislative act, but that which is commonly recognized as purely administrative.

It is urged by counsel for the complainant that section 2788 is invalid and that it cannot be assumed that section 2787 would have been passed without section 2788. With that we cannot agree. Section 2788 was inspired, evidently, by a desire to allow a certain class of pictures to be available for persons of mature age, 21 and over, but not for those under 21 years of age. We do not think that that section in any way affects the validity of section 2787.

As to the picture itself, considering the description as set forth in the bill and the affidavits, and as summarized above, one is led to conclude that the spectators' chief source of interest must be the repeated shooting at or of one man by another; and counsel urge that because the picture was only criticized as exhibiting too much shooting, it was innocuous. On the contrary, in our judgment, that charge was justifiable condemnation, especially as one of the most conspicuous crimes today is indiscriminate shooting, the statistics of which, we all know, are appalling. Obviously, it is the duty of appropriate officers and those of the courts, under the law, to prevent, and not to further, what may be called a "shooting" film. Such pictures should not be shown unless plainly harmless. Where "gun-play," or the shooting of human beings, is the essence of the play and does not pertain to the necessities of war, nor to the preservation of law and order, is for personal spite or revenge, and involves taking the law into one's own hands, and thus becomes a murder, the picture may be said to be immoral; it inculcates murder. If spectators are persuaded or taught by what they see to look with equanimity upon murder, they may be said to become less moral. A picture that flatters vice is inimical to the public good. And such a picture, that presents to the imagination of the spectators constant scenes of shooting, where the targets are men, is not the less immoral because presented in an attractive setting.

In the *Block* case, *supra,* the court said: "It is true that pictures representing the career of the 'James Boys' illustrate experiences connected with the history of the country, but it does not follow that they are not immoral. Pictures which attempt to exhibit that career necessarily portray exhibitions of crime, and pictures of the 'Night Riders' can represent nothing but malicious mischief, arson and murder. They are both immoral and their exhibition would necessarily be attended with evil effects upon youthful spectators. If the other pictures, for which permits were refused, were of similar character, the chief of police is to be commended for the refusal."

Even if the part of this section which has been added by way of amendment since the *Block* case was decided should be considered invalid, as complainant contends, the part upheld by the Supreme Court as valid would remain, as it is entirely separable from the new part (*Jackson v. Blair,* 298 Ill. 605) ; and that part of the ordinance being broad enough to cover the action of the Board of Censors complained of here, and having been declared valid in the *Block* case, it would follow that complainant's bill should be dismissed. But complainant contends that the Board of Censors did not deny a permit to it for the picture in question under the part of the ordinance which was upheld in the *Block* case, but under the portion which has since been added by way of amendment, and therefore, if the new part of the ordinance is considered invalid, the order appealed from should be affirmed. In this connection, the complainant urges that on a proceeding of this kind the averments of the sworn bill are to be taken as true, citing *Higgins v. Bullock,* 73 Ill. 206, and pointing out that it is alleged in the bill that the Board of Censors gave as their reason for refusing the permit sought by complainant, "that said photoplay is obnoxious because they say it represents the

shooting of human beings, but the said Censor Board admits that the said photoplay is not immoral or obscene." The case cited does not support the proposition contended for. This temporary injunction was awarded after notice and after due consideration of the affidavits submitted by each side. Complainant further contends that the affidavits of the members of the Board of Censors, submitted by the defendants, may not be properly considered, so far as they relate to the action of the board, because the board acted as a body and as such its action can be expressed only in the form of some resolution, and such action may not be added to or contradicted by parol. This contention is not tenable. The affidavits referred to do not purport to either add to or contradict the action of the board as a board, nor to constitute such official action. The trial court doubtless considered all these affidavits, and properly so, but apparently gave them no effect. Each of these affidavits submitted by the defendants was to the effect that the affiant was a member of the Board of Censors, and that application had been made by complainant for a permit covering the photoplay here in question. After setting out some of the scenes and incidents shown in the photoplay, the affiant in each of these affidavits proceeds to set forth that in affiant's opinion "said picture is immoral and anti-social, because it depicts scenes of violence, bloodshed, lynching, hanging, marauding, malicious mischief, kidnapping, robbing and other immoral and anti-social acts." Affiant says that in affiant's opinion "said picture is dangerous and deleterious to the good morals of those who behold it, because it caters to bestiality and extols and makes heroic bloodshed, lawlessness and other acts of violence." These affidavits may properly be considered to show that, in acting as it did, the Board was proceeding under the prohibition of the ordinance against immoral pictures. That part of the

ordinance being separable from the part added later, and already having been held valid in the *Block* case, it follows that complainant's remedy is not in equity, but at law in a mandamus proceeding.

Counsel urge that the temporary injunction should stand until there is a final hearing. We do not think that would be just. The sole relief prayed for is an injunction, and if the present injunction were allowed to stand and await a final hearing, the complainant, though ultimately defeated, might meanwhile obtain all the relief really desired.

As to the appeal that was taken, the record shows that the city filed the record within sixty days, and, as, under the law, it was unnecessary for it to file a bond, the appeal was then properly perfected. The first order of the court, allowing an appeal, was a nullity, so that the matter involved here is the appeal from the order overruling the motion to dissolve the injunction. *McCarthy v. City of Chicago,* 197 Ill. App. 564.

Being of the opinion that the ordinance is valid, it follows that the chancellor had no jurisdiction and that the only remedy, if any, was by mandamus. The decree of the chancellor is, therefore, reversed and the cause remanded with directions to dissolve the temporary injunction and dismiss the bill for want of equity.

*Reversed and remanded with directions.*

O'CONNOR and THOMSON, JJ., concur.