(No. 28214.— No. 28220.—

ALBERT LAMERE, doing business as Paradise Confectionery, *et al.,* Appellants, *vs.* THE CITY OF CHICAGO *et al.,* Appellees.—THE CITY OF CHICAGO, Appellee, *vs.* JEANNETTE D. KAZ, Appellant.

*Opinion filed November 21, 1945.*

554

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, JOSEPH H. PLECK, and EDWARD C. CALDWELL, of counsel,) all of Chicago, for appellants Albert Lamere *et al.*

HALFPENNY & HAHN, (RICHARD F. HAHN, of counsel,) both of Chicago, for appellant Jeannette D. Kaz.

BARNET HODES, Corporation Counsel, (MARTIN H. Foss, of counsel,) both of Chicago, for appellees.

Per CURIAM: At a previous term of this court, causes Nos. 28214 and 28220 were consolidated for an opinion. The former is a direct appeal from a decree entered in the circuit court of Cook county and the latter is an appeal from a judgment entered in the municipal court of Chicago. Both appeals involve the validity of an ordinance of the city of Chicago, which provides for the licensing of automatic musical instruments. The plaintiffs in No. 28214 sought to have the ordinance declared void and defendants permanently enjoined from enforcing it. In the other case, the appeal is from a judgment convicting defendant of having violated the ordinance. A certificate of the trial judge in No. 28214 recites that the validity of a municipal ordinance is involved and that in his opinion the public interest requires that it be passed upon by this court. The appellants in each case contend that the ordinance violates their rights under the State and Federal constitutions.

On December 15, 1943, the council of the city of Chicago passed an ordinance which amended chapter 104 of the municipal code by adding thereto new sections as follows:

"104-32.1 Definition.) The term 'automatic musical instrument' means any phonograph, piano player, music box, 'juke box,' or other instrument or device capable of producing or reproducing any vocal or instrumental sounds, other than a motion picture sound machine, which is governed or controlled by the deposit of a coin or token.

104-32.2 License required.) No person shall keep, or permit to be kept, for gain or profit from operation within the city, any automatic musical instrument without first having obtained a license as herein provided.

104.32.3 Application.) An application for said license shall be made in conformity with the general requirements of this code relating to applications for licenses. In addition, the applicant shall set forth the number and description of the automatic musical instrument or instruments intended to be kept for use on his premises.

104-32.4 License fee.) The annual fee for such license shall be fifty dollars for each such instrument kept or installed on the licensed premises.

104-32.5 Transfer of license.) No license issued to any person hereunder shall be transferable.

104-32.6 Special regulations.) No license issued hereunder shall permit the operation of any automatic musical instrument at any place or in any manner which will disturb the peace and quiet of persons outside the licensed premises. No immoral or indecent selections shall be played on any such instrument."

Lamere and Wolf, two of the plaintiffs in No. 28214, each own and operate a retail confectionery store and each kept an automatic phonograph in his place of business. Plaintiff Rasmussen operates a tavern and has two of such instruments in his place. Plaintiff Biggar owns 28 and Miller 25 machines, and they are what are known in the record as operators, leasing and placing the machines in various places of business upon some kind of a rental basis.

The instruments which it is claimed are subject to be licensed under the ordinance are described as automatic phonographs, electrically operated, and which play musical records at the selection of the customer. The customer selects the musical record he desires by the operation of an indicator and the instrument starts playing such record by the deposit of a five-cent piece in a slot on the machine. They are frequently referred to as "juke boxes."

Plaintiffs contend the city was without power to pass said ordinance. In answer to such contention, defendants refer to sections 23-5, 23-54, 23-61, 23-72, 23-81, 23-105, and 23-106 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1943, chap. 24, pars. 23-5 *et seq.*) but they rely principally upon section 23-54. It is as follows: "To license, tax, regulate or prohibit hawkers, peddlers, pawnbrokers, itinerant merchants, transient vendors of merchandise, theatricals and other exhibitions, shows and amusements; to license, tax, and regulate all places for eating or amusement."

The ordinance in question prohibits any person from keeping, or permitting to be kept, any automatic musical instrument for gain or profit without first obtaining a

license so to do. The place where the instrument is kept or the character of the business conducted in the place where it is located, are matters which have no bearing on the license requirements of the ordinance. The clause in the ordinance (104-32.6) which provides that no license issued shall permit the operation of the instrument "outside the licensed premises" must, in view of the other provisions, be considered as an attempt to regulate the instrument and not as an attempt to regulate the premises where the instrument happens to be located. Since the ordinance is limited to the licensing of the instrument, it is clear that the power attempted to be exercised does not come from that part of section 23-54 which authorizes municipalities "to license, tax and regulate all places for eating or amusements."

Defendants' contentions are that the power to enact the ordinance is found in that part of section 23-54 which delegates to municipalities the authority to license, tax, regulate or prohibit "theatricals and other exhibitions, shows and amusements." If the rule of *ejusdem generis* is applied as contended for by plaintiffs, then the word "theatricals" is the principal word that casts a shadow of meaning over the words that follow; that is, those forms of entertainment which are usually referred to as exhibitions, shows or amusements would be excluded from the act unless they were of or pertained to the theater. It is obvious some kinds of exhibitions, shows or amusements would be entirely foreign to "theatricals." This is well illustrated by the music box described in the ordinance. Under certain conditions it could well be a form of amusement but at the same time it would be wholly unrelated to the theater or anything pertaining to theatricals.

Plaintiffs' contention as to the rule of *ejusdem generis* rests principally upon what was said in *Condon v. Village of Forest Park*, 278 Ill. 218. In that case, the court was considering the validity of an ordinance adopted by the

city of Chicago which required the payment of an annual license fee for golf courses. The act was held invalid on the ground that there was nothing in the operation of a golf course that made it subject to regulation through an exercise of the police power of the State. What was said in that opinion in reference to the applicability of the rule of *ejusdem generis* was not necessary to the conclusion reached on the principal point upon which the case was decided.

The rule of *ejusdem generis* is only a rule of construction to aid in ascertaining and giving effect to the legislative intent. (50 Am. Jur. p. 247.) It cannot be applied to defeat the evident purpose of the statute or to restrict the scope of subjects the legislature intended to include within the act. (*Gillock* v. *People*, 171 Ill. 307.) In Sutherland on Statutory Construction, it is said: "This rule can be used only as an aid in ascertaining the legislative intent and not for the purpose of contravening the intention or of confining the operation of the statute within narrower limits than was intended by the law maker." The obvious intent of the General Assembly was to delegate to cities and villages the power to license, tax, regulate or prohibit not only those forms of entertainment and amusement commonly designated as theatricals but to include all that come within the usual and ordinary meaning of the words "exhibitions, shows and amusements."

Section 41 of article 5 of the former Cities and Villages Act (Ill. Rev. Stat. 1935, chap. 24, par. 65(41),) was substantially the same as section 23-54 of the Revised Cities and Villages Act. The earlier act was construed as combining two separate and distinct powers, one of which was the power to regulate, suppress and prohibit, which was an exercise of the police power, and the other, the power to raise revenue by taxing the subjects or objects described in the ordinance. It was held that either power could be exercised and put in force by means of

license requirements and the payment of a license fee. (*City of Metropolis* v. *Gibbons,* 334 Ill. 431; *Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20; *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58.) Under the rule that a re-enacted statute will be given the same construction as that given the prior act which it follows, the present section 23-54, will also be held to delegate two separate and distinct powers the same as the former act. The reason for the rule is that the legislature is presumed to know the construction the statute has been given and by re-enactment it is assumed that it was intended that the new statute should have the same effect. *McGann* v. *People ex rel. Coffeen,* 194 Ill. 526; Lewis' Sutherland on Statutory Construction, 2d ed. secs. 268, 271, 273.

The two powers are separate and distinct, and controlled by different principles. The two powers are for different governmental purposes. Either may be exercised by exacting a license fee. (*City of Metropolis* v. *Gibbons,* 334 Ill. 431; *Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20.) The purpose for which the police power may be exercised is for the protection of the lives, health, morals, comfort and quiet of all persons and the protection of property within the State, and a statute or ordinance enacted under such power must be designed to prohibit or regulate those things which tend to injure the public in such matters. On the other hand, an ordinance which provides for a license and the payment of a license fee without regulatory provisions of any kind is solely a revenue measure and not within the police power. *City of Chicago* v. *R. & X. Restaurant, Inc.* 369 Ill. 65.

Plaintiffs contend that the ordinance in question cannot be sustained as an exercise of the police power or as a revenue measure. They contend that as a police measure it is invalid for the reason that it does not relate to the public health, morals, safety or general welfare, and that if it should be considered that the regulation of automatic

musical instruments was within the police power, then the ordinance is invalid for the reason that the annual license fee of $50 is disproportionate to the cost of any burden created by such instruments or the regulation and supervision of them under the ordinance. They contend that as a revenue measure it is discriminatory and violates the due-process clauses of the State and Federal constitutions. They also contend it is void for vagueness and ambiguity.

In the exercise of the police power, the General Assembly may suppress and prohibit those things which are injurious to the public. Other things, businesses or occupations, which may or may not be injurious to the public, dependent upon the manner in which they are managed or conducted, may be licensed for the purpose. of regulation. (*Condon* v. *Village of Forest Park,* 278 Ill. 218.) Municipalities are also limited in the exercise of the power and in the fixing of the license fee to the end that the amount exacted bears some reasonable relation to the burdens that such thing, business or occupation to be licensed casts upon the city. Such additional burden may be incurred by the necessity of extra police supervision. *Bauer* v. *City of Chicago,* 321 Ill. 259; *Condon* v. *Village of Forest Park,* 278 Ill. 218.

Section 23-54 delegates the power to cities and villages to regulate amusements, and an automatic musical instrument as described in the ordinance is within the meaning of the term "amusements." However, it is for the courts to determine whether musical instruments as described are proper subjects for the exercise of the police power and whether the regulation of such instruments is reasonably necessary to the comfort, morals, safety or welfare of the community.

As stated, it is the musical instrument that is the subject of license and its use when licensed is not dependent upon the place or business where it is located. If an owner procures a license, he may locate it in a store, dance hall,

night club, or any other place to which the public is impliedly invited. It is available for use by anyone who deposits a. coin in the slot. There being opportunity for such a wide selection of locations and of records, it is obvious that the morals and welfare of the public would need some protection. The ordinance prohibits the playing of immoral and indecent selections, and directs that the licensing of the instrument does not include the privilege of operating it at any place or in any manner which will disturb the peace and quiet of persons outside the premises where it is located. It cannot be contended that such matters are not proper subjects for the exercise of the police power, for they may or may not be injurious to the public morals or welfare according to the manner in which they are managed, conducted and regulated, and in order to secure the public it is proper to license them for the purpose of regulation.

In *Miller* v. *Memphis,* 181 Tenn. 15, 178 S. W. 2d 382, it was held that it was a proper exercise of the police power to regulate musical instruments similar to the ones described in the instant ordinance. Also see, *Fox* v. *Galloway,* 174 Ore. 339, 148 Pac. 2d 922; *Zinn* v. *Steelville,* 351 Mo. 413, 173 S. W. 2d 398.

The further question is as to whether the annual license fee of $50 per instrument bears a reasonable relation to the additional burdens imposed upon the city by the presence of the musical instruments and the necessary expense involved in police supervision. It is stated that there are 7000 automatic musical instruments in use in the city. This is pertinent in determining the extent of any additional burden cast upon the city by the number to be supervised. The burden assumed by the city, by virtue of the ordinance, is to require an application from the owner in conformity with the general code relating to applications for licenses. Aside from the provision prohibiting them from being played so as to disturb the peace and

quiet of persons outside the premises where they are located, and the ban on the immoral and indecent records, there is no regulation of any character. There is no provision for the inspection of the records, their censorship or registration. Presumably, the only action the city would take in the event of a violation of the regulatory measures mentioned would be to revoke the license. The annual fee being so far out of proportion to the burdens imposed, the ordinance cannot be sustained as a reasonable exercise of the police power. *Ward Baking Co.* v. *City of Chicago,* 340 Ill. 212; *Herb Bros.* v. *City of Alton,* 264 Ill. 628.

The city contends that if the ordinance cannot be sustained as a valid exercise of the police power, it may be upheld as a revenue measure. In its petition for rehearing, it was said, "both the taxing power and the police power may legitimately be exercised by the terms of a single licensing ordinance." It is well settled that a municipality may derive its power to enact an ordinance from a single grant or a combination of grants of power. (*City of Chicago* v. *R & X Restaurant, Inc.,* 369 Ill. 65; *City of Rockford* v. *Hey,* 366 Ill. 526; *City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597.) The city's statement above quoted appears to imply more than is included within the foregoing principle. The statement seems to imply that if a municipality has authority to exercise police power which may have been conferred upon it by a single grant or a combination of grants, and it also has the power to enact a revenue measure, it may adopt an ordinance which combines an exercise of police power and the power to raise revenue in a single ordinance. There are statements in some of the cases which the city cites in support of such proposition. In *Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20, it was said: "License fees may be imposed for regulation, revenue or prohibition." Such statement is in accord with what had been held in many cases, that is, that the exaction of a license fee is permissible where the purpose

of the ordinance is to regulate a business or occupation, or where it is designed to prohibit or where the purpose is to produce revenue, but that is not as broad as the principle involved in the statement contained in the city's petition for rehearing. In the case cited, it was further stated: "The license fee may be both for regulation and revenue." This statement was repeated in *City of Metropolis* v. *Gibbons,* 334 Ill. 431. Such statements cannot be applied to answer the contentions that plaintiffs make in this case. Plaintiffs contend that if the license fee imposed by the ordinance is an exercise of the police power, it is exorbitant and out of proportion to the burden imposed by the regulation of the automatic musical instruments. Such objection is proper to an ordinance enacted as a police regulation but it has no application where the power exercised is for the purpose of producing revenue. Plaintiffs further contend that the ordinance cannot be sustained as a revenue measure for the reason it lacks uniformity in its application and that it confiscates their property without due process. Both of these objections are founded on constitutional provisions and have no application where the ordinance is for the purpose of regulation under the police power. It is true, in a sense, that an ordinance which exacts a license fee for police regulation produces revenue, but the law requires that such fee must be fixed with a view of raising only enough revenue to defray the cost of regulation of the business or occupation from which it is exacted.

Before considering plaintiffs' contention that the ordinance lacks uniformity and that it confiscates their property, it is necessary to first determine whether the ordinance is a taxing measure to which such objections are applicable. An ordinance which exacts a license fee as a condition upon which a business or use or occupation may continue, is a tax measure when, and only when, the collection of revenue is the sole purpose for which the license fee is imposed. (33 Am. Jur. 340.) It is well settled

that a municipality cannot, under the guise of an exercise of a police power, impose a license fee for revenue purposes. In *City of Chicago* v. *R & X Restaurant, Inc.*, 369 Ill. 65, it was said: "Under the police power license fees may not be imposed wholly for the purpose of obtaining revenue." See, also, *Price* v. *People*, 193 Ill. 114.

In noting the distinction between the exercise of the two powers, in 33 Am. Jur., page 340, it is said: "In general, therefore, where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper imposed by virtue of the police power, but where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax."

In *Herb Bros.* v. *City of Alton*, 264 Ill. 628, it was held that where an ordinance contains no regulatory features it is a revenue measure. *City of Chicago* v. *R & X Restaurant, Inc.*, 369 Ill. 65.

If a municipality cannot under the guise of the police power exact a license fee for revenue purposes, it would follow that the regulatory provisions in the ordinance, that is, the provisions prohibiting indecent or immoral selections and disturbance of the peace by loud sounds show that the ordinance was adopted in the exercise of the police power and not as a revenue measure. Under such conditions it is not necessary to consider plaintiffs' objections to the ordinance as a revenue measure. For the reasons stated, the ordinance cannot be sustained.

For the reasons assigned, the decree in No. 28214 is reversed and the cause remanded with directions to proceed in accordance with the views expressed. In No. 28220 the judgment of the municipal court is reversed.

*No. 28214, reversed and remanded,*
*with directions;*
*No. 28220, judgment reversed.*