Hillsborough, } No. 3943.
Feb. 6, 1951. }

MARINE CORPS LEAGUE & a.

*v.*

JOSEPHAT T. BENOIT, *Mayor & a.*

*Sheehan, Phinney & Bass* and *Samuel A. Margolis* (*Mr. Phinney* orally), for the plaintiffs.

*J. Francis Roche*, city solicitor (by brief and orally), for the defendants.

JOHNSTON, C. J. The purpose of the ordinance is shown by its section 3. It is to the effect that any centralized music reproducing system and any coin-operated music reproducing instrument or coin box that is maintained in any business establishment or building in the city of Manchester shall be so regulated that there shall be no reproduction of recordings of a lewd or indecent nature.

The defendants readily admit that the city has no power to levy the stated license fees as taxes. They disclaim any intention of justifying the ordinance as one for revenue purposes and defend it solely as a police measure.

Under the police power, a municipality may be granted authority to regulate mechanical and automatic musical instruments including centralized systems and coin-operated contrivances. "In any event, municipal competency in this respect may be predicated on, or is a phase of, municipal police power to provide for the public morals and welfare. Theatrical, operatic and musical performances and motion-picture shows have always been recognized as proper subjects of police inspection and control, and in comparison with them the necessity for supervision and regulation of music and songs furnished by juke boxes commercially operated is, at best, merely a question of degree." 7

McQuillin, Municipal Corporations (3d *ed.*) 40. In *Adams* v. *New Kensington*, 357 Pa. 557, an ordinance providing a license fee for music boxes, juke boxes and vending machines was upheld under the police power as derived by grant from the Commonwealth. The court on page 565 said: "It would appear to be entirely in order for a municipality to make sure, by periodic inspections, that they do not become a public nuisance . . . because of their playing vulgar or obscene records." See also, *Lamere* v. *Chicago*, 391 Ill. 552, and *Zinn* v. *Steelville*, 351 Mo. 413.

Under R. L., c. 66, s. 13, *par.* XIII, city councils are given the power, "To restrain . . . all kinds of immoral and obscene conduct." Accordingly, the board of mayor and aldermen of the city of Manchester had the granted authority from the Legislature to pass the present ordinance if it is constitutional and otherwise valid.

The plaintiffs argue that the fees imposed exceed any reasonable administrative expense, so that it should be concluded that the ordinance is an unlawful effort to tax and therefore void. What may be permitted with respect to license fees is stated in *Opinion of the Justices*, 88 N. H. 497, 499, as follows: "The license fees established by section 8 do not exceed the probable expense of issuing the licenses and of inspecting and regulating the business licensed." *State* v. *Angelo*, 71 N. H. 224, 229, is cited. See also, *State* v. *Cox*, 91 N. H. 137, 144.

An ordinance should not be declared invalid unless its illegality clearly appears. *New London* v. *Davis*, 73 N. H. 72, 77; *Vermont Salvage Corp.* v. *St. Johnsbury*, 113 Vt. 341, 347. The annual fees required are ten dollars for a juke box so-called, one hundred dollars for a centralized reproducing musical system and one dollar for each coin box outlet of the latter. There is no evidence and we cannot conclude from judicial notice that these fees are in excess of the cost of issuing the licenses and of subsequent supervision and inspection of the systems and instruments designated. The right and duty to supervise and inspect are implied as means of enforcing the ordinance although not expressed in it. "Juke boxes and similar music machines placed in taverns, restaurants, dine-and-dance establishments and other places of public resort, are subject to police supervision and licensing. Juke box licenses may be conditioned on their operation by persons of good character in reputable places. The licensing of juke boxes and the amount of the fee or tax must, of course, be reasonable. The amount of the fee or tax may be limited to an amount equivalent to the cost of police regulation and supervision of the in-

struments, but, where authorized, it may be in amount sufficient to raise revenue." 9 McQuillin, Municipal Corporations, 363. In *State* v. *Cox, supra*, fees ranging from three hundred dollars to a nominal amount for single parades on public streets were upheld as reasonable. In *Lamere* v. *Chicago, supra*, an ordinance was declared void because of an unreasonable fee but the amount was fifty dollars annually for juke boxes and other instruments in contrast to the sum of ten dollars required by the Manchester ordinance.

The requirement with regard to reasonable fees is stated in *Opinion of the Justices*, 94 N. H. 501, 504, as follows: "'The power to regulate the use of the streets is a delegation of the police power of the state government and whatever reasonably tends to make regulation effective is a proper exercise of that power. It justifies the charge of a fee and the imposition of the penalty, and the regulative measure is not invalid because, incidentally, the city's receipts of money are increased. The distinction between the taxing power and the police power will be found in the purpose for which the particular power is exercised.' *City of Buffalo* v. *Stevenson, supra*, 263. If the fees charged approximate the cost of purchase, maintenance and policing such meters, a slight excess or deficiency in reference to actual cost of meters and their operation will not under any view of the law affect the validity of the act or ordinance by which they are established."

It is claimed that the ordinance is unconstitutional because it is arbitrary and discriminatory with respect to persons it assumes to regulate. The New Hampshire Bill of Rights is cited in support of this contention. "Classification to be valid must reasonably promote some proper object of public welfare or interest and may not be sustained when the selection and grouping is so arbitrary as to serve no useful purpose of a public nature." *Opinion of the Justices*, 85 N. H. 562, 564. See also, *State* v. *Pennoyer*, 65 N. H. 113; *Woolf* v. *Fuller*, 87 N. H. 64, 72, 73; *Welch Company* v. *State*, 89 N. H. 428, 431, 432.

The inequalities complained of are the exemption of coin-operated radios and the difference in the fees required. In *Miller* v. *Memphis*, 181 Tenn. 15, which involved an ordinance prohibiting juke boxes because of their noise, the Supreme Court of Tennessee held that there was no arbitrary classification because radios were not regulated in the same manner. "The mere fact that there is no ordinance regulating radios has no bearing upon the question before us." (*p.* 23). So, with respect to the exclusion of phonographs from a classification of music boxes, juke boxes and vending machines, it was said in *Adams* v. *New Kensington, supra*, 565: "It is urged that this ordinance in-

volves an illegal differentiation between musical machines operated by the insertion therein of a coin and phonographs not so operated. It is true that a statute or ordinance may not discriminate between persons engaged in the same trade or pursuit; but it is not invalid merely because it does not prohibit other acts which may be as equally mischievous as the acts prohibited."

In the absence of evidence concerning the number of coin-operated radios in Manchester, their exclusion from the operation of the ordinance cannot be considered arbitrary classification. The fact of their fewness or of federal control of radio programs may be an adequate reason for not including them in the regulation of the ordinance. "In short, the Legislature may regulate the major portion of any given problem within its police power without being required in so doing to control other minor and collateral evils connected therewith. 'The Legislature is entitled to hit the evil that exists.' *Queenside Hills Realty Co.* v. *Saxl*, 328 U. S. decided April 22, 1946." *The Chronicle &c. Pub. Co.* v. *Attorney-General*, 94 N. H. 148, 152. Nor can we say that the annual fees of one hundred dollars for a centralized system, which in the present case has one hundred seventeen outlets, ten dollars for a juke box and one dollar for each of the outlets of the centralized system are arbitrary and discriminatory. The potentiality for harm and the need for supervision should all be taken into account. The centralized system requires more frequent checking because of the need of ascertaining the correct number of outlets and because of the more widespread effects in case of a reproduction of a forbidden recording. The supervision of any one outlet of such a system can be much less than that of an independent juke box. The classifications of the ordinance are not arbitrary or discriminatory.

Another reason advanced for holding the ordinance invalid is that it is indefinite and uncertain with respect to the persons required to obtain licenses. 37 Am. Jur. 785, is cited. There it is stated: "It is a well recognized principle of law that an ordinance must be definite and certain. Certainty is necessary in order . . . to meet the test of reasonableness." It is reasonably clear that the person, firm or corporation that is required annually to pay the stated fees for the licenses is the same person, firm or corporation that is forbidden without license to establish or operate a centralized system or to place a coin-operated instrument or coin box in any business establishment or building. The word "place" should be construed to mean "maintain in place" as well as the act of placing, since the license is an annual one. The requirements against establishing or operating and

placing or maintaining in place are sufficiently definite and certain. The words expressed are simple English words used in their ordinary meaning. The phrase "establish or operate" refers to the proprietor of the business of operating the system and not to one who merely physically installs it, nor to the customer that drops in the coin. The one that places or maintains in place a juke box or a coin box is the proprietor of the business establishment that is served by the contrivance, and is not one that merely installs such instrument, nor a customer that inserts the coin. It is unnecessary to get into nice questions of title of physical property. The ordinance aims to regulate the conduct of the proprietors of businesses and is sufficiently definite and certain with respect to those required to be licensed. *Fox* v. *Galloway*, 174 Ore. 339.

Finally it is said that the ordinance is unconstitutional and void because no norms or standards are set up for the granting or revocation of licenses. It should be noted that this is not a case of improper delegation of powers without a declared policy in a prescribed standard such as was considered in *Firemen's Ins. Co.* v. *Houle, ante*, 30, 32.

However, it may be considered whether any lack in the ordinance of a standard or basis for the granting or revocation of licenses makes it arbitrary or discriminatory contrary to the New Hampshire Bill of Rights. In our opinion, the statement of the purpose in section 3 of the ordinance furnishes a sufficiently definite test for the revocation of licenses. Licenses may also be revoked for failure to display them. Grounds for reasonable belief that forbidden reproduction may occur would justify the withholding of a license. The board of mayor and aldermen cannot act arbitrarily and cannot discriminate except upon the basis stated. This is not such a case as *Hoboken* v. *Bauer*, 137 N. J. L. 327.

The operation of centralized music reproducing systems and the use of coin-operated instruments in proper manner are rights that everyone is entitled to have in connection with his business. *Mushlin* v. *Rowell*, 77 N. H. 183. They are not privileges that may be arbitrarily limited in number. *Cf. North Hampton &c. Assn.* v. *Commission*, 94 N. H. 156.

The statement in 92 A. L. R. 400, 410, with respect to the vesting of discretion in public officials may be applied here. "As an exception or qualification to the rule stated, it has been held that it is not always necessary that statutes and ordinances prescribe a special rule of action, but on the other hand, some situations require the vesting of

some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare." The limited discretion that the ordinance provides for the board of mayor and aldermen is reasonable.

The ordinance is held to be valid.

*Case discharged.*

DUNCAN, J., dissented: the others concurred.

DUNCAN, J., *dissenting:* The ordinance in question contains no express provision which would either require or authorize any such inspection of records or other supervision of the reproduction of music by licensees as would justify imposition of the classified fees established by the ordinance. In my judgment no such provision should be implied. *State* v. *Gerry,* 68 N. H. 495, 503; *State* v. *Cox,* 91 N. H. 137, 143; 6 McQuillin, Municipal Corporations (3d *ed.*) 136, 137. It confers a measure of control not contemplated by the ordinance, and unlikely to be exercised in practice. See *Lamere* v. *Chicago,* 391 Ill. 552, 562. The fees which will be exacted thus bear no relation to the time and money required to be expended in enforcement, and I would hold the ordinance invalid. *State* v. *Angelo,* 71 N. H. 224, 229.