Request of House of Representatives,
No. 6408.

OPINION OF THE JUSTICES.

April 28, 1972.

The following resolution was adopted by the house of representatives and filed in this court on March 16, 1972:

"WHEREAS, House Bill 228, as amended in house journal March 25, 1971, pages 527-530, 'An Act relative to excavating, filling, mining and construction in the inland waters of the state, establishing an inlands wetland authority and making an appropriation therefor.' is presently pending before a joint committee consisting of the house committee on resources, recreation and development and the senate committee on resources and environmental control, for study, and

"WHEREAS, section 13 of house bill 228 provides for the distribution of fees and fines collected on the licensing of boats and motors, and

"WHEREAS, this distribution of such license fees and fines includes towns and cities, the water resources board, the water supply and pollution control commission, the inlands wetlands authority and the inland wetlands fund, and

"WHEREAS, questions have been raised concerning the constitutionality of said section,

"NOW THEREFORE BE IT

"RESOLVED, that the justices of the supreme court be respectfully requested to give their opinion, upon the following questions of law:

"1. Would any constitutional provision be violated by returning to the town or city the amount of license fees and fines on boats and motors which was previously collected by the town or city as taxes?

"2. Would any constitutional provision be violated by the distribution of license fees and fines collected on boats and motors to the following:
(a) Water Resources Board;
(b) Water Supply and Pollution Control Commission;
(c) Inland Wetlands Authority; and
(d) Inland Wetlands Fund?

"Be it further resolved, that the Speaker transmit seven copies of this resolution and of House Bill 228 and amendment to the Clerk of the Supreme Court for consideration by the Court."

The following answer was returned:

*To the House of Representatives:*

The undersigned justices of the supreme court submit the following reply to the inquiry contained in your resolution adopted and filed with this court on March 16, 1972.

House bill 228 is entitled "An Act relative to excavating, filling, mining and construction in the inland waters of the state, establishing an inland wetland authority and making an appropriation therefor." The authority thus created would exercise general supervision over the administration and enforcement of the Act and approve, modify, or disapprove project proposals affecting the inland waters and wetlands of the State. The bill would establish more inclusive and increased fees for the registration of boats and motors. RSA ch. 270. It would eliminate the present municipal property tax on boats. RSA 72:15(II).

Your inquiry, however, is directed solely to section 13 of this bill which provides for the distribution of fees and fines collected on the licensing of boats and motors and specifies to whom the funds are to be paid.

Your first question reads as follows: "Would any constitutional provision be violated by returning to the town or city the amount of license fees and fines on boats and motors which was previously collected by the town or city taxes?" Our answer is "Yes" for the following reasons:

RSA ch. 270 which imposes fees for the registration of boats and motors, which bill 228 proposes to increase, is a regulatory measure enacted by the State in the exercise

of its police power. *Hooksett Drive-In Theatre, Inc.* v. *Hooksett,* 110 N.H. 287, 266 A.2d 124 (1970). RSA 72:15 (II) which provides for a municipal property tax on boats, which bill 228 proposes to eliminate, is a revenue measure imposed by the State in the exercise of its taxing power. *Laconia* v. *Gordon,* 107 N.H. 209, 219 A.2d 701 (1966).

To be valid the license fees must bear a relation to and approximate the expenses of issuing the licenses and of inspecting and regulating boating in the public waters of our State. *Marine Corps League* v. *Benoit,* 96 N.H. 423, 78 A.2d 513 (1951). The funds so produced must be expended to meet the direct and incidental regulatory costs. 4 Cooley, Taxation *s.* 1809 (1924). This is unlike the present municipal tax on boats which is a levy made on their value, at the same rate as the tax on other similar property, to raise revenue to meet the costs of government. *Laconia* v. *Gordon supra.*

Bill 228 proposes that out of the fund in which are kept license fees and fines collected under RSA ch. 270, the State treasurer "pay to each town and city the amount of taxes it collected for the tax year 1970 on boats pursuant to RSA 72:15 II". *S.* 13(I). This court has reiterated recently its opinion that the proceeds of taxes raised at the State level could be distributed to towns and cities to replace revenue formerly received by them from taxes which are to be repealed. *Opinion of the Justices,* 110 N.H. 117, 125, 262 A.2d 290, 296 (1970). However, it would be unconstitutional to use license fees produced by a regulation of boats and motors to replace tax revenues lost by cities and towns by repeal of a property tax on boats. This would be an expenditure for purposes unrelated to the regulation of boats and motors and also would be evidence that the license fees materially exceeded the cost of regulation thus rendering the licensing measure illegal. *Laconia* v. *Gordon,* 107 N.H. 209, 219 A.2d 701 (1966); *see Gibbons* v. *City of Chicago,* 34 Ill. 2d 102, 214 N.E.2d 740 (1966).

Your second question reads as follows: "Would any constitutional provision be violated by the distribution of license fees and fines collected on boats and motors to the following: (a) Water Resources Board; (b) Water Supply and Pollution Control Commission; (c) Inland Wetlands Authority; and (d) Inland Wetlands Fund?"

What is a reasonable license fee depends in large part on sound legislative discretion. The fee is to be measured principally by the necessary expenses of issuing the license, and of such inspection, regulation and supervision as may be necessary. *Hooksett Drive-In Theatre, Inc.* v. *Hooksett,* 110 N.H. 287, 289, 266 A.2d 124, 126 (1970). It is proper, however, to take into account also all the incidental expenses which are likely to be incurred in consequence of the activity regulated provided the resulting fee does not become unreasonable. *Laconia* v. *Gordon,* 107 N.H. 209, 211, 219 A.2d 701, 703 (1966); 4 Cooley, Taxation *s.* 1809 (1924); 51 Am. Jur. 2d Licenses *s.* 40 (1970); 53 C.J.S. Licenses *s.* 19 (1948). In the light of these principles we examine the distribution of the license fees and fines proposed by section 13 of House bill 228 (proposed RSA 270:6-a) about which you inquire in your second question.

The bill provides in section 13(III) that commencing with fiscal year 1973 there is to be transferred the sum of $250,000 from the special fund made up of license fees and fines to the appropriation for the operation of the Division of Safety Services in the Department of Safety. This money is to be used for the promotion of the safety of navigation and the administration and enforcement of RSA ch. 270 which provides for the licensing and regulation of boats and motors. You did not make this a part of your inquiry as you assumed correctly that there was no doubt as to the constitutionality of this payment.

The proposed payments to the Water Resources Board, the Water Supply and Pollution Control Commission, the Inland Wetlands Authority, and the Inland Wetlands Fund, about which you inquire, are more indirectly connected with the licensing and regulation of boats and motors. The mere fact that the revenue from the licensing fees and fines exceeds the expenses of issuing licenses, inspection, regulation and supervision and thus produces some surplus revenue does not render the licensing act unconstitutional. *Opinion of the Justices,* 98 N.H. 527, 529, 96 A.2d 733, 734 (1953); *Laconia* v. *Gordon,* 107 N.H. 209, 211, 219 A.2d 701, 703 (1966). However, if the revenues obtained clearly and materially exceed the direct and incidental costs of licensing such excess revenue becomes a tax subject to all the constitutional require-

ments of taxation and may render the whole measure unconstitutional. *Laconia* v. *Gordon supra;* 4 Cooley, Taxation *s.* 1784 (1924).

House bill 228 (*s.* 13(I)) was intended to produce the funds necessary to reimburse the cities and towns for the property taxes on boats in the amount collected in 1970. Because of our answer to your question No. 1 this unspecified sum of money plus an additional $150,000 (*ss.* 13(II), (IV), (V)) and maybe more (*s.* 13 (VI)) was estimated to be produced from the licensing fees to be imposed by sections 9-11 of this bill.

In the absence of more definite information as to the amount of money to be produced by the bill and the relationship of the agencies involved to the licensing and regulation of boats and motors and agency costs in connection therewith, we are unable to answer this inquiry. Therefore we respectfully decline to answer question No. 2.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
EDWARD J. LAMPRON.
WILLIAM A. GRIMES.
ROBERT F. GRIFFITH.

April 28, 1972.

Office of Legislative Services (John E. Skorko, Esquire, Harry H. Rumble II) for negative answer.

