Hillsborough-northern judicial district
No. 2005-352

GAYLE B. D'ANTONI & a.

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES

Argued: March 8, 2006
Opinion Issued: June 14, 2006

*Mark M. Rufo*, of Nashua, by brief and orally, for the plaintiffs.

*Kelly A. Ayotte*, attorney general (*Orville B. Fitch II*, senior assistant attorney general, on the brief, and *Michael K. Brown*, senior assistant attorney general, orally), for the defendant.

BRODERICK, C.J. The plaintiffs, Gayle B. D'Antoni, Thomas E. D'Antoni, Nicholas Cenatiempo and Mary Cenatiempo, appeal the decision of the Superior Court (*Abramson*, J.) granting summary judgment to the defendant, the Commissioner of the New Hampshire Department of Health and Human Services. We affirm.

I

The plaintiffs are two married couples who each paid $45 to obtain marriage licenses. This cost is established by RSA 457:29 (2004), which states:

The fee for the marriage license shall be $45 to be paid by the parties entering into the marriage. The clerk shall forward $38 from each fee to the department of health and human services for the purposes of RSA 173-B:15. The clerk shall retain the

remaining $7 as the fee for making the records of notice, issuing the certificate of marriage, and forwarding the $38 portion of the marriage license fee.

The $38 portion is allocated to a special fund for domestic violence programs (DOVE Fund). The sole purpose of the fund is to provide revenues for the domestic violence program established in RSA 173-B:16 (2002), and DOVE Fund monies are not available for any other purpose. RSA 173-B:15 (2002). The State treasurer is required to deposit all money generated from the $38 portion into the fund. *Id.*

Although RSA 457:29 labels the entire $45 a fee, the plaintiffs alleged that the $38 portion is, in fact, a tax. As such, they claimed that it violated Part I, Article 12 and Part II, Article 5 of the State Constitution. The commissioner disagreed, arguing that the $38 portion of the $45 payment was a fee, and therefore was not within the purview of those constitutional provisions.

The plaintiffs moved for summary judgment and attached as exhibits a certificate of intention of marriage and a pamphlet describing the requirements for receiving a marriage license, one of which is the $45 payment. The commissioner filed a cross-motion for summary judgment and attached affidavits by William R. Bolton, Jr., and Michelle Rosenthal. Bolton is the registrar of vital records and director of the division of vital records administration, and Rosenthal is the domestic violence intervention coordinator at the department of health and human services.

Bolton's affidavit explained that his division manages approximately 40,000 vital records each year, including almost 10,000 marriages and 5,000 divorces. His affidavit further explained that the cost of the tracking software for marriage and divorce records is approximately $105,000 per year, with marriage records alone approaching $70,000. Taking into account the additional funds expended on application support, staffing, helpdesk, equipment replacement, maintenance and preservation of records, Bolton estimated that the combined cost of the marriage license program, including record creation and retention, is approximately $40.44 per marriage.

Rosenthal's affidavit described the incidence of domestic violence among married couples. Based upon her four years of experience and training in the area of domestic violence, Rosenthal related that she had "personal knowledge regarding the relationship of domestic violence to marriage." Her affidavit explained that historically, husbands have had social and legal authority over their wives. "While the legal status of wives has changed, remnants of these historical relationships, and the sense of entitlement and ownership they fostered, exist in our society today." She

contended that many husbands believe that they are entitled to take liberties with their wives, including acts of violence, that they would not take with other persons. She stated that the "relationship between domestic violence and marriage extends to all aspects of marriage including the process of applying for and obtaining a license to be married."

Rosenthal explained that nearly one-third of American women report being physically or sexually abused by a husband or boyfriend at some point in their lives, and that 30% of female murder victims in the United States are slain by their husbands or boyfriends. Finally, Rosenthal's affidavit stated that one-half of all women will experience some form of violence from their partners during marriage, and that more than one-third are battered repeatedly every year. For each of these statistics, she provided a citation to a survey, an FBI report, or a scholarly journal.

The plaintiffs filed an objection to the commissioner's motion for summary judgment, and also objected to Bolton's affidavit on the grounds that it presented "no information relevant to the issue before the court." They further argued that the commissioner seemed "to imply that the Court should rewrite statutory law on marriage license fees so as to reimburse the State for costs of keeping mandated vital statistics." They did not, however, dispute the dollar amounts contained in the Bolton affidavit, nor did they offer any contrary figures.

The plaintiffs also objected to Rosenthal's affidavit on the grounds that it presented "no information relevant to the issue before the court," and that it was "not based upon personal knowledge or admissible facts" to which Rosenthal would be competent to testify. The plaintiffs argued that she was not an expert in history, psychology, or sociology, but nonetheless gave historical, psychological, and sociological opinions. While they did attach an article by two domestic violence experts explaining that domestic violence rates are lower among married couples than among couples who cohabit, they did not present any evidence or arguments attacking the study, report, and article upon which Rosenthal relied.

In granting the commissioner's motion for summary judgment and denying the plaintiffs' cross-motion, the trial court, relying upon *American Automobile Association v. State of New Hampshire*, 136 N.H. 579 (1992), determined that the funds acquired through issuing marriage licenses were fees and not taxes, and that because they are dollars, the $38 charge was fungible and could be directed to the DOVE Fund. The trial court also ruled that, as fees, the funds were reasonable because they related to the costs incurred by the State in issuing marriage licenses.

Finally, the plaintiffs apparently made claims relating to equal protection and the fundamental right to marry, which the trial court denied. This appeal followed.

## II

The plaintiffs first argue that the trial court erred in granting the commissioner's motion for summary judgment. Both parties moved for summary judgment and neither contends that there are any genuine issues of material fact. As such, we review the trial court's application of law to the facts *de novo*. *See Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 35 (2005). The opponent of a motion for summary judgment has the burden of contradicting facts in the proponent's affidavits or risking them being deemed admitted for purposes of the motion. *Carbur's Inc. v. A & S Office Concepts, Inc.*, 122 N.H. 421, 423 (1982). Our review of the $38 charge is confined to our general tax-versus-fee analysis.

■ The State Constitution grants the legislature the power "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the . . . state." N.H. CONST. pt. II, art. 5. In applying this provision, the threshold inquiry is whether the charges in question are fees or taxes. A "tax" is an enforced contribution to raise revenue and not to reimburse the State for special services. *American Automobile Assoc. v. State*, 136 N.H. 579, 584 (1992). Taxes must be levied proportionately upon all taxpayers. *Starr v. Governor*, 148 N.H. 72, 74 (2002).

■ To be considered a "fee," the amount paid to acquire a business license, for example, must bear a relationship to and approximate the expense of issuing the license and of inspecting and regulating the business licensed. *Laconia v. Gordon*, 107 N.H. 209, 211 (1966). We have applied this same analysis to other kinds of charges, such as motor vehicle certificates of title fees. *See American Automobile*, 136 N.H. at 581-83. We consider principally the necessary expenses of issuing a license, certificate, or other document, and any costs associated with related inspection, regulation or supervision as may be required. *Id.* at 585; *Gordon*, 107 N.H. at 211. The amount of a "fee" will be sustained as long as it is not grossly disproportionate to the regulatory expenses—that is, it may cover incidental expenses incurred in consequence of the activity regulated, provided that the resulting "fee" does not become unreasonable. *American Automobile*, 136 N.H. at 585.

The plaintiffs argue that the $38 charge is not related to the costs of issuing a marriage license or to the regulation of marriages. While we recognize that marriage licenses, as the plaintiffs contend, are "neither

subject to periodic renewal nor [do they subject] the licensee to any State regulatory authority," we cannot say that the trial court erred in ruling that the funds are related to the costs of issuing the license. The Bolton affidavit indicates that the cost to the State of issuing and record-keeping for each marriage license is approximately $40.44.

The plaintiffs contend that the State must assert that it would *save* money by ceasing to issue the marriage license. We have never required such a determination, and decline to do so now. To the contrary, we have required only a showing by "definite information" of a relationship between the amount of money generated by a licensing statute, and the costs associated with licensing and regulating the activity in question. *American Automobile*, 136 N.H. at 587. The trial court ruled that "any money generated by RSA 457:29 for use in the [DOVE Fund] is less than the amount of money that the State spends in connection with issuing the license." We agree. In *American Automobile*, we examined the amount and type of costs expended on the State's automobile theft prevention program. *Id.* at 587. The Bolton affidavit represents precisely the kind of "definite information" that we relied upon in that case.

The plaintiffs also argue that "the Bolton affidavit does not truly set out costs to the State from the issuance of marriage licenses." The trial court did not make factual findings with regard to the costs outlined in the affidavit, recognizing "that genuine issues of material fact must be resolved at trial." However, the trial court further stated, "With respect to the State's estimates of the costs associated with issuing marriage licenses, the petitioners have offered no counteraffidavits, nor even argued that the State's figures are incorrect." By doing so, the plaintiffs risked the Bolton affidavit being deemed admitted for purposes of the motion, and we thus affirm the trial court's reliance upon it. *See Carbur's Inc.*, 122 N.H. at 423.

With the Bolton affidavit uncontested, the trial court determined that the $38 charge was not grossly disproportionate to the costs involved. In *American Automobile*, we held that the expenditures on anti-theft programs were "substantially greater than the ... fees collected" by the State. *American Automobile*, 136 N.H. at 587. As the trial court here properly assumed that the facts in the Bolton affidavit were true, the trial court did not err in concluding that the $38 charge is less than the costs to the State, and, accordingly, that it is not grossly disproportionate to the costs involved in issuing the plaintiffs' marriage licenses.

The plaintiffs next argue that the legislature improperly directed the charges to the DOVE Fund. We disagree. In *American Automobile*, we recognized that "dollars are fungible, and we can assume, for the purpose of evaluating the reasonableness of the certificate of title fees, that local governments allocated all of their revenue-sharing funds to the police

departments." *Id.* As the charges collected in this case are also dollars, the trial court did not err in ruling that they are fungible and that the legislature may require that those moneys be allocated directly to the DOVE Fund.

The plaintiffs contend that "RSA 457:29 explicitly prohibits the State from using its portion of the marriage license fee as fungible dollars, as the fee must be forwarded *in toto* to the [DOVE Fund]." The plaintiffs misunderstand the term "fungible." That dollars are fungible does not mean that we require that they must *in fact* be mixed with the general fund, and thus be expended for multiple other programs. Rather it means that they *are capable* of being used for other programs, one of which is the DOVE Fund. That the legislature has mandated that the moneys be paid directly to the DOVE Fund does not make them any less fungible than if it had required that they first be placed into the general fund.

Lastly, the plaintiffs contend that the trial court erred in granting the commissioner's motion for summary judgment because the charges "imposed by RSA 457:29 [are] not related to the costs of *issuing* a marriage license." They argue that the abuse the DOVE Fund seeks to curtail occurs between *all* family or household members, and not simply married couples. They rely on RSA 173-B:1, X (2002), which defines "family or household member" as:

> Spouses, ex-spouses, persons cohabiting with each other, and persons who cohabited with each other but who no longer share the same residence ... [as well as parents] and other persons related by consanguinity or affinity other than minor children who reside with the defendant.

The commissioner contends that the $38 charge is related to issuing marriage licenses because, as explained in the Rosenthal affidavit, abuse levels are high among married couples. The plaintiffs respond by stating that domestic abuse extends beyond the realm of marriage, relying on the article by the domestic violence experts submitted in opposition to the Rosenthal affidavit. In essence, they argue that the charge is both over- and underinclusive; namely, it is paid by some individuals who may never take advantage of the DOVE Fund, while at the same time not paid by many people who do benefit from its services.

It is unclear whether the plaintiffs argue that this over- and underinclusiveness makes the $38 charge: (1) an unconstitutional tax because it "is an enforced contribution to raise revenue and not to reimburse the state for special services," *American Automobile*, 136 N.H. at 584 (quotation omitted), which is not applied proportionately to all taxpayers, *Starr*, 148 N.H. at 74; or (2) an unreasonable fee because the

record-keeping costs described by the Bolton affidavit constitute more than "incidental expenses incurred in consequence of the activity regulated," *American Automobile*, 136 N.H. at 585 (quotation omitted). Given the following discussion, however, we need not determine whether they would prevail on either argument.

Illinois appears to be the only other jurisdiction to have addressed similar issues. In *Boynton v. Kusper*, 494 N.E.2d 135 (Ill. 1986), the Illinois Supreme Court examined the constitutionality of a $10 charge to obtain a marriage license in that State. The Illinois legislature had increased the cost of a marriage license from $15 to $25, with the additional $10 to be directed to the Illinois Domestic Violence Shelter and Service Fund. *Boynton*, 494 N.E.2d at 136.

The inquiry under the Illinois Constitution to determine whether a charge is a fee or a tax is similar to that under the New Hampshire Constitution. In Illinois, "a charge having no relation to the services rendered, assessed to provide general revenue rather than compensation, is a tax." *Id.* at 138 (quotation omitted). The *Boynton* court stated:

> The portion of the marriage license fee in question here has no relation to the county clerk's service of issuing, sealing, filing, or recording the marriage license. Its sole purpose is to raise revenue which is deposited in the Domestic Violence Shelter and Service Fund so that the Department of Public Aid can provide domestic-violence shelters and service programs. Thus, . . . this portion of the fee is a tax.

*Id.* (citations omitted).

Having determined that the $10 portion was a tax, the court then stated that "the tax has been placed only upon those single people who apply for marriage licenses. Other classes of people equally eligible to receive the benefits of the Domestic Violence Shelters Act are not assessed such a 'fee.'" *Id.* at 139. The court was concerned that the Illinois Legislature, under the guise of a fee, might place the burden to fund many general-revenue programs upon narrow classes of individuals rather than spreading them among the general public.

> Using the same cause-and-effect test that the defendants would have us apply to the relation between marriage and domestic violence, other worthy social problems can be found that are just as closely and reasonably related to marriage as is domestic violence, if not more so. Since *all* divorces involve people who have been married, why should not a marriage counseling program be financed by another tax on marriage licenses? Since

most marriages produce children, why should we not defray certain educational costs by the imposition of yet another add-on tax to marriage licenses? Why should not such a tax be imposed for the maintenance of institutions for delinquent or neglected children, and why should not yet another tax be imposed to defray juvenile-probation costs? We conclude in this case that the imposition of a tax on the issuance of a marriage license does not bear a reasonable relation to the public interest sought to be protected by the Act in question and the means adopted, that is, the imposition of the tax on marriage licenses, is not a reasonable means of accomplishing the desired objective.

*Id.* at 140. For these reasons, the *Boynton* court held that the $10 portion of the marriage license charge was an arbitrary and irrational use of the State's power, and thus an unconstitutional tax. *Id.* at 138, 139-40.

While we share some of the concerns of the Illinois Supreme Court, this case is distinguishable from *Boynton*. In that case, the $10 portion was *in addition* to the fees necessary to pay for the State's expenses, and thus the court was required to examine whether the charge was sufficiently related to issuing the marriage licenses. *Id.* at 136. Here, however, the uncontested Bolton affidavit makes clear that the $38 charge is *less than* the State's costs. Accordingly, we need not determine if, as the plaintiffs allege, the $38 charge constitutes reimbursement for special services, or whether the costs incurred by funding the DOVE Fund are more than incidental expenses related to issuing the licenses.

While we recognize that directing the $38 charge to the DOVE Fund here is like the $10 charge in *Boynton* in that it is both over- and underinclusive, we disagree with the plaintiffs and the Illinois Supreme Court that this aspect necessarily makes it unreasonable, irrational, or arbitrary. Such an inquiry is generally limited to the least-restrictive-means analyses of higher levels of constitutional review. *See, e.g., City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 126 (1990) (Souter, J., dissenting) (discussing over- and underinclusive nature of statute in applying intermediate scrutiny); *Chen v. Ashcroft*, 381 F.3d 221, 227 (3d Cir. 2004) ("Of course, this use of marital status as a proxy is undoubtedly both over- and under-inclusive to some extent, but neither over- nor under-inclusiveness is alone sufficient to render the use of a metric like marital status irrational."); *Lofton v. Secretary of the Dep't of Children & Family*, 358 F.3d 804, 822-23 (11th Cir. 2004) ("The Supreme Court repeatedly has instructed that neither the fact that a classification may be overinclusive or underinclusive nor the fact that a generalization underlying a classification is subject to exceptions renders the

classification irrational."), *cert. denied*, 543 U.S. 1081 (2005). We recognize that there may be statutes that are so extremely over- or underinclusive as to make them unreasonable, irrational, or arbitrary. However, because we do not reach the issues of whether the DOVE Fund constitutes special services or whether the $38 charge constitutes more than incidental expenses to the State, we need not decide whether this is such a case.

▮ Accordingly, we hold that the trial court properly ruled that the $38 charge was a fee, not a tax, because the uncontested evidence demonstrated that the charges bore a reasonable relationship to, and approximated the expenses of, issuing the plaintiffs' marriage licenses. *See Gordon*, 107 N.H. at 211. We thus affirm the trial court's granting of the commissioner's motion for summary judgment.

### III

We next address whether the trial court erred in denying the plaintiffs' motion for summary judgment. It is here that the plaintiffs argue that RSA 457:29 "violates equal protection rights under" Part I, Article 12 and Part II, Article 5 of the State Constitution, as well as violates their fundamental right to marriage. We can find no indication in the record that these arguments were pled. Nor have we been provided a transcript to review whether they were raised during a hearing before the trial court. However, because both arguments were noted by the trial court in its order, we will assume that they were preserved.

We agree with the trial court that the precise nature of the plaintiffs' arguments relating to equal protection and marriage as a fundamental right are not clear. As the trial court stated, "It appears that [the plaintiffs] make their equal protection arguments with respect to taxpayers, taxes, and uniform taxation. Because the Court already has determined, as a threshold matter, that the license charge is a fee—not a tax—the Court does not reach these constitutional arguments." For these same reasons, we do not reach the plaintiffs' claims relating to marriage as a fundamental right and equal protection. Nor do we address the remainder of the plaintiffs' arguments on appeal—namely, whether RSA 457:29 is ambiguous, whether it constitutes double taxation, whether they are entitled to seek a refund under a common law refund theory, and whether they are entitled to equitable relief—all of which were argued on the premise that the $38 charge was a tax, not a fee.

*Affirmed.*

DUGGAN, GALWAY and HICKS, JJ., concurred.