**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0510, <u>Liberty Utilities (EnergyNorth Natural Gas) Corporation v. City of Concord; EnergyNorth Natural Gas, Inc. d/b/a Liberty Utilities v. City of Manchester</u>, the court on June 16, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiff, Liberty Utilities Corporation (Liberty), appeals a decision of the Superior Court (<u>Smukler</u>, J.) in favor of the defendants, the City of Concord (Concord) and the City of Manchester (Manchester), in Liberty's action seeking declaratory and injunctive relief relating to the defendants' respective excavation ordinances. Liberty argues that the trial court erred by: (1) concluding that its claim that the ordinances are preempted by state law was resolved in a prior appeal; (2) misapprehending the nature and scope of the factual inquiry on remand from this court; and (3) upholding the provisions of the defendants' excavation ordinances imposing $5.00 per square foot roadway damage fees. The defendants cross-appeal, arguing that the trial court erred by: (1) ruling unlawful the provisions of the defendants' excavation ordinances imposing enhanced roadway damage fees for excavation on recently constructed or rehabilitated roads; and (2) denying the defendants' motion to strike the testimony of Liberty's expert. We affirm in part and reverse in part.

<u>I. Factual Background</u>

The record reflects the following facts. Liberty is a natural gas distribution company that owns and maintains underground gas distribution pipes throughout New Hampshire. Liberty must periodically excavate public roadways to install, maintain, and replace these pipes.

Before any entity excavates a public roadway in either Concord or Manchester, it must obtain an excavation permit pursuant to the defendants' respective excavation ordinances. The issuance of these permits is conditioned upon payment of certain fees. Although the fee provisions of the defendants' excavation ordinances differ in some respects, both impose: (1) a damage fee of $5.00 per square foot of excavation occurring within paved roadways (hereinafter referred to collectively as "damage fees"); and (2) enhanced fees ranging from $10.00 to $15.00 per square foot for excavation occurring on paved roadways within five years of that road's construction, reconstruction, rehabilitation, or overlay (hereinafter referred to collectively as "enhanced

fees"). Both excavation ordinances permit, but do not require, municipal officials to waive these fees under certain circumstances.

In 2010, Liberty filed separate petitions seeking declaratory and injunctive relief from the defendants' excavation ordinances, alleging that the fee provisions are preempted by state law, and that the fees constitute unlawful taxes. In the action between Liberty and Concord, both parties filed cross-motions for summary judgment. The Superior Court (McNamara, J.) entered summary judgment for Liberty. The trial court concluded that RSA 231:185 (2009) and RSA 236:11 (2009) — which require any entity that excavates a public road to restore the road to the condition it was in prior to the excavation — preempted the fee provisions of Concord's excavation ordinance because the fee provisions and the statutes actually conflicted. Because the trial court found that state law preempted the ordinance, it did not reach the question of whether the fees constituted illegal taxes. Concord appealed. While that appeal was pending, the suit against Manchester was held in abeyance.

We reversed and remanded. See EnergyNorth Natural Gas, Inc. v. City of Concord, 164 N.H. 14, 17-18 (2012). On remand, the trial court consolidated the cases and held a six-day bench trial. In its order, the trial court ruled that our decision in EnergyNorth had definitively resolved Liberty's preemption claim in the defendants' favor. After making extensive factual findings, the trial court further concluded that the defendants' damage fees were valid fees, and that the enhanced fees constituted unlawful taxes. The parties' appeals followed.

II. Standard of Review

"We will affirm the trial court's factual findings unless they are unsupported by the evidence and will affirm the trial court's legal rulings unless they are erroneous as a matter of law." Hayes v. S. N.H. Med. Ctr., 162 N.H. 756, 759 (2011).

III. Liberty's Appeal

A. Preemption

Liberty first argues that the trial court erred by interpreting EnergyNorth as definitively resolving its preemption claim. It further argues that the factual question remanded by the trial court would directly determine the outcome of its preemption claim. Specifically, Liberty contends that, had the trial court resolved the remanded factual question by finding that excavation and patching of roadways always diminishes the roadway's life expectancy, this would have shown that the defendants incur costs that cannot be recovered under the state statutes, and therefore that the municipal ordinances are not in conflict with the statutes and not preempted. Put differently, Liberty asserts

2

that a factual finding that excavation and patching inherently damages roadway life expectancy would demonstrate that excavation inflicts a discrete and separate injury not recoverable under the existing statutory scheme, and that the statutes do not provide a complete and exclusive remedy. On the other hand, Liberty argues that, if the trial court had made a factual finding that excavation and utility patching does not inherently diminish roadway life expectancy, this fact would demonstrate that the defendants already have a complete remedy under the existing statutory scheme.

The defendants respond that the trial court correctly interpreted EnergyNorth as conclusively resolving Liberty's preemption claim. Alternatively, Concord argues that, even if this court were to conclude that resolution of the preemption issue required fact finding by the trial court, the defendants would still prevail given the trial court's factual finding on remand that "utility excavation and patching of paved roadways with new pavement generally diminishes the roadway's life expectancy."

As the appealing party, Liberty has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, Liberty's challenges to it, the relevant law, and the record submitted on appeal, we conclude that Liberty has not demonstrated reversible error. See id.

### B. Misapprehension of Remanded Factual Inquiry

Liberty next argues that the trial court erroneously recast the factual inquiry on remand from this court, and thereby imposed an "impossible" burden of proof upon Liberty. Specifically, Liberty claims that the court transformed the remanded question from "whether patching an excavated paved roadway with new pavement diminishes or restores its original life expectancy" to whether "patching an excavated paved roadway with new pavement never diminishes the original life expectancy of that road." (Emphasis added.) In Liberty's view, this "change" infected the trial court's analysis of Liberty's preemption and illegal tax claims, rendering the trial court's analysis and conclusions fatally flawed. We disagree.

Although it is true that the trial court stated that Liberty "ha[d] not sustained its burden of proving that patching an excavated paved roadway with new pavement never diminishes the original life expectancy of that road," (emphasis added), we conclude that, reading the trial court order in its entirety, the trial court's assessment did not impact its analysis of Liberty's claims. The trial court rejected Liberty's preemption claim based upon its interpretation of EnergyNorth, not Liberty's failure to prove that patching an excavated roadway never diminishes its life expectancy. It upheld the defendants' damage fees because Liberty "failed to prove a lack of rational relationship between the defendants' roadway fees and legitimate government interests," again, not

3

because Liberty failed to prove that patching an excavated roadway <u>never</u> diminishes its life expectancy. Finally, we note that the trial court ruled in Liberty's favor on the enhanced fees issue. Thus, even if we were to assume that the trial court improperly altered the factual inquiry on remand, the alteration did not affect the trial court's analysis of Liberty's claims. Accordingly, we find no error.

### C. Damage Fees

We turn to Liberty's final claim on appeal: that the trial court erred by concluding that the damage fees were valid municipal fees. The parties agree that, in order for the defendants to prevail, the damage fee provisions must survive both a rational basis review and an unlawful tax analysis. Because the parties and the trial court have framed and analyzed the damage fee issue using these standards, we assume, without deciding, that these are the proper standards to apply in this case.

### 1. Rational Basis Review

Liberty argues that the trial court erred by concluding that the damage fees provisions of the ordinance were valid because they were supported by a rational basis. The rational basis test "requires that the legislation be only rationally related to a legitimate government interest." <u>Cmty. Res. for Justice v. City of Manchester</u>, 154 N.H. 748, 756 (2007) (quotations omitted). Under this test, "we presume that the challenged ordinance is valid and require the challenger to prove otherwise." <u>Id</u>. at 756-57. "[W]e will not independently examine the factual basis for the ordinance," but simply inquire "as to whether the legislature could reasonably conceive to be true the facts upon which it is based." <u>Id</u>. at 757 (quotations omitted).

The defendants counter that the legitimate government interest served by their ordinances is the preservation and protection of their roads. We agree with the defendants that this is a legitimate government interest, and that the damage fees are rationally related to that interest. The defendants adopted their roadway fee ordinances based upon a review of studies demonstrating that utility excavation and patching degrades roadways, and adversely affects their life expectancy. The defendants could reasonably conceive these facts to be true. Furthermore, we conclude that, by compensating the defendants for the cost of repairing and maintaining roadway degradation caused by excavation, the ordinances could conceivably serve the government interest of preserving and protecting the defendants' roadways. <u>See id</u>. (upholding zoning ordinance prohibiting correctional facilities because city could reasonably conceive asserted concerns about correctional facilities in the community to be true and prohibition on facilities therefore could conceivably serve legitimate government interest). We hold that the trial court did not err in finding the defendants' damage fees rationally related to a legitimate government interest.

4

## 2. Unlawful Tax Analysis

RSA 41:9-a authorizes municipalities to impose fees in relation to "[t]he issuance of any license or permit which is part of a regulatory program" established by the municipality. RSA 41:9-a, II(a) (2012). "Such fees or charges shall not exceed . . . an amount reasonably calculated to cover the [municipality's] regulatory, administrative[,] and enforcement costs." RSA 41:9-a, III; see also D'Antoni v. Comm'r, N.H. Dep't of Health & Human Servs., 153 N.H. 655, 658 (2006) ("To be considered a 'fee,' the amount paid to acquire a business license, for example, must bear a relationship to and approximate the expense of issuing the license and of inspecting and regulating the business licensed."). In determining whether the amount of a fee is reasonable, we consider both the direct and incidental costs of the regulatory program. See Opinion of the Justices, 112 N.H. 166, 169 (1972). That is, we consider the expenses necessary to issue licenses or permits, inspect licensees, and enforce the regulatory scheme, D'Antoni, 153 N.H. at 658-59, as well as "expenses incurred in consequence of the activity regulated," American Automobile Assoc. v. State, 136 N.H. 579, 585 (1992) (quotation omitted).

However, "[i]f revenues generated by a licensing act clearly and materially exceed the direct and incidental costs of licensing, the excess revenue becomes a tax subject to all the constitutional requirements of taxation." Id. at 585 (quotations omitted). Thus, if a municipality charges a licensing fee that is not reasonable — in other words, the fee is grossly disproportionate to the direct and incidental costs of the regulatory program — that fee may constitute an unlawful tax. See id. at 584-85.

Liberty does not dispute that the future costs of repairing and maintaining excavated and patched roadways are direct or incidental to the defendants' regulation of excavation. Rather, Liberty claims that the damage fees "go above and beyond the charging authority . . . and therefore constitute a tax" because "there is no correlation between the calculation of [the damage fees] to any impact of utility patching on [the defendants'] expenses associated with the repair, maintenance[,] or replacement of [their] roadways." We are unconvinced.

Liberty argues that, because the trial court found that utility excavation and patching does not always damage roadways, there is no relationship between the damage fees and the defendants' regulation of excavation. Although it is true that the trial court did find that utility excavation and patching does not always degrade roadways, it is also true that it found that utility excavation and patching of paved roadways with new pavement generally diminishes a roadway's life expectancy because, within a ten foot radius of the patch, both the subsurface and surface are compromised. These factual findings are supported by the record. Further, the trial court found that the $5.00 fee is reasonably calculated to cover the defendants' future costs in

maintaining or reconstructing excavated and patched roadways. This finding is also supported by the record. Thus, we find no error in the trial court's conclusion that the damage fees bear a relationship to the defendants' regulation of excavation because they compensate the defendants for damage caused by the regulated activity. See Opinion of Justices, 112 N.H. at 170; see also NJ Shore Builders Ass'n v. Jackson, 970 A.2d 992, 1006 (N.J. 2009) (upholding municipal tree removal fee that compensated municipality not only for review of permit application and inspection, but also for costs of tree replacement); Thurston Rental Owners v. Thurston Cty., 931 P.2d 208, 212-13 (Wash. Ct. App. 1997) (upholding municipal fee imposed upon septic-system owners where fee revenue was intended for future use in protecting against water pollution caused by septic systems), superseded by statute on other grounds as noted in Potala Village Kirkland v. City of Kirkland, 334 P.3d 1143, 1146-48 (Wash. Ct. App. 2014).

To the extent that Liberty also argues that the damage fees are invalid because, in some instances, fees are imposed where no damage actually occurs, we disagree. A municipal fee need not be reasonable in amount on a permit-by-permit basis so long as the fee reasonably approximates the direct and incidental costs of the regulatory program as a whole. See D'Antoni, 153 N.H. at 658-59, 663 (concluding that marriage license fee was reasonable based upon approximate costs of operating regulatory program as a whole); see also Samis Land Co. v. City of Soap Lake, 23 P.3d 477, 485 (Wash. 2001) (en banc) (stating that a regulatory fee may be valid even though it is not "individualized according to . . . the burden produced by the fee payer" (quotation omitted)). Here, although in some instances a damage fee may be imposed where no damage actually occurs, the defendants' damage fees remain valid because they reasonably approximate the direct and incidental costs of the regulatory program as a whole.

In sum, we affirm the trial court's rulings as to Liberty's preemption and damage fees claims.

IV. The Defendants' Cross-Appeals

In their cross-appeals, the defendants assert that the trial court erred when it ruled that their enhanced fees constituted unlawful taxes, and when it denied their motion to strike the testimony of Liberty's expert.

The defendants first argue that the trial court erred when it ruled that the defendants' enhanced fee provisions constituted unlawful taxes. The trial court found that the enhanced fees constituted invalid taxes because the purpose of the fees was "to punish" entities that excavate recently constructed or rehabilitated roads. The trial court based its conclusion that the purpose of the fees was punitive upon the testimony of several municipal employees that one of the purposes of the enhanced fees was "to deter the plaintiff and others

similarly situated from cutting into newly paved streets," (emphasis added), and its finding that the fees were not compensatory.

The defendants argue that the trial court erred by: (1) finding that the defendants intended the fees to be punitive; and (2) ruling deterrence to be an invalid regulatory purpose. Liberty responds that the evidence supported the trial court's finding that the purpose of the fees was punitive, and demonstrated that the fee amounts are not reasonably related to compensating the defendants for their regulatory expenses. We agree with the defendants.

To determine the proper characterization of a law as either a valid fee or an unlawful tax, "it is necessary to discover its basic purpose." American Automobile Assoc., 136 N.H. at 585 (quotation omitted). "In so doing, we must consider the statute's declared purpose as well as its essential characteristics." Id. (quotation omitted). Based upon testimony that the defendants' enhanced fee provisions were intended to deter excavations on recently constructed or rehabilitated roads, the trial court concluded that the purpose of the ordinances was "to punish those who cut into a newly paved road, not to compensate the defendants for costs associated with enhanced degradation." (Emphasis added.) Thus, the trial court equated a deterrent purpose with a punitive purpose in ruling the enhanced fees invalid. This was error.

Neither Liberty, nor the trial court, cited any relevant authority in support of the proposition that a punitive purpose renders an ordinance invalid, and we have found none. In fact, municipalities are authorized to impose penalties under certain circumstances. See RSA 47:17, VII (2012) (authorizing municipalities to enact ordinances that impose penalties up to $1,000 for their breach on a variety of subjects, including "digging up the ground" on public ways or interfering with traffic on public ways); Davy v. Dover, 111 N.H. 1, 4 (1971) (upholding city ordinance imposing penalty for violation). Regardless, it is well-accepted, and we have previously held, that the purpose stated in the testimony relied upon by the trial court — deterrence — is a valid regulatory purpose. See Opinion of Justices, 94 N.H. 501, 504 (1947) (upholding regulation which sought to discourage parking at certain times and places by imposing parking fees in excess of costs of parking meters); San Juan Cellular Telephone v. Pub. Serv. Com'n, 967 F.2d 683, 685 (1st Cir. 1992) ( "[A fee] may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive."). Therefore, we conclude that the trial court erred by invalidating the enhanced fees based upon its characterization of deterrence as an invalid regulatory purpose.

Applying the correct standard to the trial court's factual findings, the enhanced fees constitute valid municipal fees, not unlawful taxes. In finding the defendants' damage fees to be reasonable and valid, the trial court relied upon its factual findings, the defendants' expert's testimony, and various

studies.  This same evidence supports the reasonableness of the enhanced fees.

Just as with the damage fees, the trial court's factual finding that excavation and patching generally diminishes a roadway's life expectancy demonstrates that there is a relationship between the enhanced fees and the cost of the regulatory program because the fees compensate the defendants for damage caused by the regulated activity.  See Opinion of the Justices, 112 N.H. at 170 (stating that "the incidental expenses which are likely to be incurred in consequence of the activity regulated" may be taken into account in determining the reasonableness of a fee).

Furthermore, the defendants' expert's testimony supported the conclusion that the amount of the enhanced fees approximated the costs of the regulatory program.  Wayne Seiler, the defendants' expert, testified that a fee between $14.00 and $28.00 per square foot would reasonably compensate the defendants for the damage caused by excavation and patching on roads that are less than ten years old.  Manchester's enhanced fees are $10.00 per square foot, and Concord's enhanced fees range from $10.00 to $15.00 per square foot depending upon the age of the road.  The defendants' respective enhanced fees apply only to roads that have been constructed or rehabilitated within five years prior to the excavation.  Thus, Seiler's testimony, which the trial court relied upon in concluding that the damage fees were reasonable and lawful, also supports the conclusion that the enhanced fees are reasonable and lawful.

Finally, the studies the trial court relied upon in its damage fees analysis also demonstrate the reasonableness of the amount of the enhanced fees.  Indeed, the studies provide ample examples of municipal excavation fees that are comparable in amount to the defendants' fees and which impose increased fees for excavations occurring on recently constructed or rehabilitated roads.  Therefore, the trial court's factual findings support the conclusion that the enhanced fee provisions impose reasonable, lawful fees — not unlawful taxes.

To the extent that the trial court also found the enhanced fees provisions to be invalid because they lacked a rational basis, we disagree.  Under rational basis review, the court need not evaluate the defendants' "actual interests in adopting the ordinance" or "independently examine the factual basis for the ordinance."  Cmty. Res. for Justice, Inc., 154 N.H. at 757.  The court's task is merely to determine whether the defendants could conceivably believe as true the facts upon which the ordinance is based and whether the ordinance could conceivably serve the legitimate government interests the defendants articulate.  Id.; see also U.S. Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980) (stating that where there are "plausible reasons" for legislative action, "[i]t is, of course, constitutionally irrelevant whether this reasoning in fact underlay the legislative decision" (quotations omitted)).

Because the defendants' actual motive in enacting the ordinances is immaterial under rational basis review, whether the enhanced fees were actually intended to deter or punish excavation in certain circumstances has no bearing on their validity. Even if the defendants' actual intent in enacting the ordinances were relevant under rational basis review, as explained above, deterrence is a valid regulatory purpose. The enhanced fee provisions could conceivably serve the government interest of preserving and protecting the defendants' roadways by deterring such excavations in the first instance and compensating the defendants for the cost of repairing and maintaining roadway degradation caused by excavation. Thus, to the extent the trial court invalidated the enhanced fee provisions for a lack of rational basis, we conclude that it erred.

In sum, we reverse the trial court's ruling that the defendants' enhanced fee provisions constitute unlawful taxes.

Finally, the defendants challenge the trial court's denial of their motion to strike the testimony of Liberty's expert, H.A. Alan Todres. Because the defendants prevail on their first cross-appeal claim and with respect to Liberty's appeal, we need not address this argument. See Wolfgram v. N.H. Dep't of Safety, 169 N.H. 32, 40 (2016); Seabrook Police Assoc. v. Town of Seabrook, 138 N.H. 177, 178 (1993).

Affirmed in part; and
reversed in part.

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**

9